## CIRCUIT COURT OF NORTHUMBERLAND COUNTY

F. L. Hall, Inc.

v.

Warehouse Landing Assocs. et al.

John A. Christopher et al.

v.

Warehouse Landing Assocs. et al.

October 11, 1995

BY JUDGE JOSEPH E. SPRUILL, JR.

Plaintiffs, Hall and Christopher (H and C) seek specific performance of two contracts between them and defendant, Warehouse Landing Associates (Warehouse). Pursuant to the contracts, each dated May 24, 1990, Warehouse conveyed several parcels of land to H and C. Closings were held in January and February, 1991.

On June 14, 1994, H and C filed these chancery actions to compel Warehouse to refund the full purchase price paid by H and C for these properties, plus accrued annual interest at 10%, upon tender by H and C of deeds of reconveyance.

The contracts upon which these proceedings are based each contain the following provision:

> B. The Seller agrees to have the roads in the subdivision constructed to the Virginia Department of Transportation specifications including hard surfacing no later than June 1, 1991. Likewise, Seller agrees to cause to be installed all underground utility services along the roads no later than June 1, 1991. The provisions of this paragraph B shall survive closing.

> In the event that the roads are not built as aforesaid or the underground utilities are not installed as aforesaid, then, at Purchasers option, Seller will repay to Purchasers the purchase price together with interest at the rate of 10% per cent per annum from the date of closing to the date of repayment. Purchasers will reconvey the said lots to Seller. All to be accomplished within thirty days of demand in writing by Purchasers.

The issue is whether H and C are now entitled to the specific enforcement of this provision. For the reasons that follow, the Court finds that they are not.

The roads and utilities were not completed by June 1, 1991. They were completed by April, 1992. H and C were aware that the roads and utilities were not completed by June 1, 1991. They are experienced investors and had acquired these properties for resale. Immediately after their acquisition, H and C set about to actively prepare and market these lots for resale. They were unable to sell any lots for the prices they were asking. Finally, on December 14, 1993, thirty months after the date by which the roads and utilities were to have been completed, they notified Warehouse of their intent to invoke their rights under the foregoing contract provision and to exercise their option to receive a return of the full purchase price, with interest.

Warehouse contends that H and C waited an unreasonable time to exercise the option; that the claim is barred by the doctrine of laches; that an award of specific performance at this point would be inequitable and would result in an unconscionable bargain; and that the plaintiffs by their delay and subsequent actions have waived their rights to reconvey the property to Warehouse and have their investment refunded.

The response of H and C is straightforward. They contend that because the provisions in question impose no time limitation upon them to demand performance, Virginia Code section 8.01-246(2) governs and provides for a five year limitation from the time the cause of action accrues. Further, they argue that equity follows the law, which is to say that if a legal demand be asserted in equity which is not barred by statute law, neither is it barred in equity.

Initially, the Court finds that the contract provisions under consideration are options. H and C argue that the contracts do not contain any "options" but rather an absolute right to demand reconveyance. In fact, plaintiffs themselves refer to these paragraphs as options in their bill of complaint and there can be little question but that this is what we have here.

As a general principle of contract law, when a contract is silent regarding the time of performance, the time of performance will be deemed to be within a reasonable time after the execution of the agreement. In this case, the seller, Warehouse, offered to repurchase the property if it failed to perform by a specified time. H and C had the option to accept this offer. An offeree's power of acceptance is terminated at the time specified in the offer, or if no time is specified, at the end of a reasonable time. Restatement of the Law, Second, Contracts, Ch. 3, section 41.

Settled contract law implies a reasonable time limitation for performance of conditions in contracts for the sale of land where no time for performance is fixed by the contract itself. *The Ryland Group v. Wills*, 229 Va. 459 (1985).

Under these circumstances, the plaintiffs were required to exercise the options within a reasonable time. The question then is whether they did so.

In determining what is a reasonable time, "the circumstances to be considered have a wide range: they include the nature of the proposed contract, the purposes of the parties, the course of dealing between them, and any relevant usages of trade. In general, the question is what time would be thought satisfactory to the offeror by a reasonable man in the position of the offeree . . . ." Restatement of the Law, Second, Contracts, section 41, b.

"The more significant the risk, the greater is the need for limitation, and hence the shorter is the time which is reasonable . . . . A reasonable time for acceptance in a speculative transaction is brief not only because the offeror does not intend to assume an extended risk without compensation but also because he does not intend to give the offeree an extended opportunity for speculation at the offeror's expense." Restatement of the Law, Second, Contracts, section 41, f.

H and C knew on June 1, 1991, that the roads and utilities were not completed. They could have exercised their option at that point. They elected not to do so. They chose instead to continue to try to sell these lots. For thirty months after their right to exercise the options accrued, H and C elected not to exercise the option but rather to take their chances with the real estate market. During all this time, they speculated in the real estate market, virtually without risk, for, at a minimum, interest was accruing on their investment at the rate of 10% per year. On the other hand, Warehouse was at substantial risk. Not only was it effectively denied the ability to make use of the funds paid by H and C, they were responsible for substantial interest accruals throughout the option period.

A period of thirty months under these circumstances is an unreasonable time. By waiting for such period, H and C have waived their right to exercise the options. "Waiver is the voluntary, intentional abandonment of a known legal right, advantage or privilege." *Weidman v. Babcock*, 241 Va. 40 (1991). "A waiver such as is claimed here may be generally defined as a voluntary abandonment of some legal right, advantage, or privilege, or such conduct as warrants an inference of the abandonment of such right, or the intentional doing of an act inconsistent with claiming it, all of which is usually dependent upon the peculiar circumstances of the case." *Covington Virginian v. Woods*, 182 Va. 538 (1944).

Knowing of their rights under the option, the plaintiffs nonetheless elected not to exercise these rights. To maintain this posture over a period of two and one-half years is tantamount to an abandonment of their option rights.

Finally, the Court finds that to grant specific performance under these circumstances would be to give to the plaintiffs an unconscionable bargain.

As long as H and C had the right to exercise their options, Warehouse was at risk. The longer H and C postponed their decision, the greater the exposure of Warehouse. At some point, this becomes unconscionable. Here, that point was reached.

For these reasons, the relief requested will be denied in each case.