The opinion of the Court was delivered at April term 1823, at Northampton, by
Wilde J.
The first question to be determined is, whether a paroi lease for a year is valid according to the terms of it, or whether it is an estate at will only.
By the statute of 1783, c. 37, § 1, it is enacted, that all leases by paroi, and not put in writing and signed by the \ parties so making the same, shall have the force and effect of leases or estates at will only; and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect.
The language of the statute is plain and unambiguous, and when such is the case, the will of the legislature must be obeyed. That will could not have been expressed with more perfect clearness. But it has been argued that a judicial construction has been given to an English statute nearly similar (29 Car. 2, c. 3), according-to which it is held by the courts there, that paroi leases for an uncertain time, with the reservation of an annual rent, may be good as leases from year to year, notwithstanding the statute. And it is said that the legislature here, in adopting the same language, must have intended to adopt the same construction. This argument would have weight, if the two statutes were in all respects similar.
But there is an exception in the English statute in favor of paroi leases not exceeding the term of three yeais, which was adopted here in the provincial St. 4 W. M. The omission of it in the statute now in force shows plainly the intent of the legislature, to place all paroi leases on the same footing.
*47 It is a well settled rule, that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance ; which is altogether inadmissible. We are not therefore at liberty to suppose, that the proviso or exception in the provincial statute was omitted by mistake ; and if not, then clearly it was the intention of the legislature, to place all paroi demises on the same footing ; for such is the obvious import of the language of the statute of frauds.
That the doctrine as to tenancies from year to year depends upon the exception in the English statute, appears to me very clear, although but little is to be found in the books on this point. In the case of Legg v. Strudwick, 1 Salk. 414, it was decided that a paroi demise habendum de anno in annum et sic ultra quamdiu ambabus partibus placeret, was a lease for two years, and from year to year after ; so that if the tenant holds on after the two years, he is not tenant at will, but for a year certain. The court say, “That his holding on after the two years must be taken to be an agreement to the original contract, and in execution of it. And such an executory contract,” they say, “ is not void by the statute of frauds, though it be for more than three years ; because there is no term for above two years ever subsisting at the same time.” The plain inference is, that but for the exception in the statute, the lease in that case would have been held a lease at will only.
The doctrine, as to tenancies from year to year, was introduced long before the statute of frauds. In the case of Doe v. Porter, 3 D. & E. 16, Lord Kenyon says, “ The tenancy from year to year succeeded to the old tenancy at will, which was attended with many inconveniences. And, in order to obviate them, the courts very early raised an implied contract for a year, and added, that the tenant could not be removed at the end of the year without receiving six months’ previous notice.” At first, a lease without limitation of time, and with the reservation of an annual rent, was considered as a lease for a year certain. This was better than the old tenancy at will, but still inconvenient, because the tenant might be compelled to quit at the end oí *48 the year without notice. Timmins v. Rowlinson, 1 W. Bl 533; S. C. 3 Burr. 1609. Then followed tenancies from year to year, which were found most convenient, as the estate could not be suddenly determined, nor without six months’ notice to quit. Thus stood the law at the time the English statute of frauds was penned, and the exception was introduced, no doubt, for the purpose of supporting short paroi leases, and tenancies from year to year depending on implied contracts. But whether this be so or not, it is very clear, that the English doctrine respecting tenancies from year to year can only be supported by the exception in the statute, and that by our statute there can be no tenancy from year to year, unless by a lease in writing.[1] But the case under consideration is not a case of tenancy from year to year, even according to the English doctrine. It is a case of a paroi demise for a year certain; .and in England, and in New York, where the law is the same, such a paroi demise would be valid. If the tenant should hold over after the year, he would then be tenant from year to year, and would be entitled to notice.
If there be a lease for a year, and, by consent of both parties, the tenant continues in possession afterwards, the law implies a tacit renovation of the contract. The plaintiff therefore would not, by the law of England, be entitled to notice to quit.
Where a lease is determinable at a certain time, no notice to quit is necessary ; because, says Lord Mansfield, both parties are equally apprized of the determination of the term. Messenger v. Armstrong, 1 D. & E. 54; Bright v. Darby, 1 D. & E. 162. All that is said, therefore, about tenancies from year to year, and the necessity of a notice to quit in every such tenancy, is not applicable to the present case.
2. The next question to be considered, is, whether a tenant at will is entitled to notice to quit.
I hold that he is not ; and this is the principal objection to a tenancy at will. Notice to quit is frequently given, and is one way of determining the lease ; but not the only one. It may be determined by the entry of the lessor on the land, and his exercising any act of ownership inconsistent with the nature of *49 the estate ; or by the death or outlawry of either landlord or tenant. And either party may determine the estate- whenever he pleases.
This is clearly the law, notwithstanding the case of Parker v. Constable, 3 Wils. 25, which is a short and imperfect report. I presume that was a tenancy from year to year ; for at the time it was decided, (10 Geo. 3,) the old tenancy at will had in England became obsolete. It existed only notionally, as Wilmot J. said long before. If this is not a satisfactory explanation of that case, it is sufficient to add, that it is opposed to the whole current of the authorities. In the case of Phillips v. Covert, 7 Johns. Rep. 1, Kent C. J. says, “ That tenancies at will are held to be estates from year to year, merely for the sake of a notice to quit; as to every other purpose they are regarded as mere tenancies at will.” And with this agree all the dicta of the English judges. Thompson J. says that it has been settled in New York, that notice to quit is not necessary to a tenant at will. Jackson v. Bryan, 1 Johns. Rep. 323. And Spencer J. says, that whether notice to quit in that case was necessary, depended on the question, whether the estate was a tenancy at will, or for years. Tompkins J., it is true, inclined to the opinion, that a tenant at will is entitled to notice to quit; and he relies on the case of Parker v. Constable, which he says he did not find had been overruled. And it ought not to be, if it is to be understood as I have supposed it might be. He refers also to the case of Rigge v. Bell, 5 D. & E. 471; but that case will not warrant the conclusion he seems to draw from it. Notice to quit was not held necessary, in that case, on the ground that the defendant was tenant at will, but because by the terms of the lease he was to hold for a time certain. It was a case of a paroi demise for the term of seven years, which the court held void, by the statute of frauds, as to the duration of the lease, but good as to the other terms of it. One of these terms was, that the defendant should quit at Candlemas, and the court decided, that if the lessor chose to determine the tenancy before the expiration of the seven years, ne could only put an end to it at Candlemas. This was the only point decided in that case. In the case of Jackson v. Laughhead, 2 Johns. Rep. 75, it was decided by a majority *50 of the court, against the opinion of Thompson J., that, in ejectment against a mortgager, notice to quit was necessary. This was never held to be law in this State; nor is it the law of England.
Lord Mansfield says, in the case of Keech v. Hall, Doug. 21, that “ when the mortgagor is left in possession, the true inference to be drawn is an agreement that he shall possess the premises at will in the strictest sense, and therefore no notice is ever given him to quit.” The same doctrine is laid down by Lord Ellenborough in the case of Thunder v. Belcher, 3 East, 449; and such I think is unquestionably the law. A mortgagor is not entitled to emblements, much less to six months’ notice to quit.
It appears, therefore, from a review of all the authorities, .that an estate at will may be determined without previous notice ; that the inconvenience arising from this principle of the common law led, in England, to the introduction of the tenancy from year to year ; and that notice to quit, as practised there, is required only in relation to the latter estate.[1]
3. The question then is, whether, when an estate is determined by the lessor, the lessee is obliged immediately to quit, or may be forcibly expelled.
We are all of opinion, that the law does not impose on the lessee these hard terms.
The lessee is entitled to the emblements, and a reasonable time is allowed to him for the purpose of removing his family, furniture, and other property. If the lessor disturbs him it the exercise of this right, an action will lie for the lessee. This principle was recognized in the case of Rising v. Stan *51 nard, 17 Mass. Rep. 287, and is well established. A contrary doctrine would be extremely harsh and unreasonable.[1]
4. Nothing further, then, remains to be considered, except the question, whether there was, in this case, sufficient and reasonable time allowed the tenant to remove : and this we have found to be a question of no small difficulty. There being no rule established, each case must depend on its own peculiar circumstances. This, to say the least of it, is inconvenient. No right, which is capable of being defined and limited, ought ever to depend on the discretion of the judges ; the exercise of which necessarily leads to uncertainty, which is commonly productive of more difficulty than even the operation of a bad rule. It is for this reason that the Court adopts rules of practice, instead of exercising its discretion in each particular case.
We shall hereafter probably find it necessary to frame some rule applicable to cases of this sort ; should we not be prevented by the intervention of the legislature, whose unlimited power to change and modify the law would enable them most effectually to provide a remedy for existing inconveniences and difficulties. These probably were not foreseen when the provincial statute was revised ; and perhaps the operation of the exception or proviso in that statute was not well understood or considered. At that time the doctrine of leases and tenancies at will was not familiar in practice, and the exception itself is somewhat obscure.
This case, however, must be decided by the law as it now is ; and a majority of the Court think, that a reasonable time was not given to the tenant to remove, and that for this reason a new trial must be granted. What will be the opinion of the Court after another trial cannot be now determined. On a fuller report of the case on this point, perhaps the Court may be of .opinion that time enough was allowed. This must depend on the circumstances of the case, which do not at present sufficiently appear by the report.[2]

New trial granted.

 Rising v. Stannard, 17 Mass. R. 282.

 It appears from a note to the case of Coffin v. Lunt, 2 Pick. 71, that Jackson J. and Putnam J. came to a different result on this point, and the remarks of Parker C. J. in that case seem to imply that this question wa. not considered to be then definitively settled. But by St. 1825, c. 89, § 4 it is provided, that all leases at will and tenancies at sufferance of any lands or tenements may be terminated by either party, after giving to the other party three months’ notice; and where the rent is “ payable more frequently than quarterly, the notice shall be sufficient if it be equal to the interva. between the times of payments thereof; ” but in cases of neglect or refusa to pay the rent due and in arrear, fourteen days’ notice to the tenant or accu pant shall be sufficient.

 Doty v. Gorham, 5 Pick. 490.

 See Coffin v. Lunt, 2 Pick. 77, note. Whether the purchaser of a vessel sold at sea has taken possession of her within a reasonable time after her arrival, this bet' ig necessary for the maintenance of his title- against an attach *52 ing creditor of the vendor, is a question to be decided by the jury, upon the circumstances. Joy v. Sears, 9 Pick. 4. See Porter v. Blood, 5 Pick 58